RECEIVED
SDNY DOCKET UNIT
2026 JUL 13 PM 12: 44

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PAUL AGOSTINO,

Plaintiff,

v.

CITY OF YONKERS, THOMAS G. MEIER,
TRACEY KUZEMCZAK, GREGORY MACK,
and ARLENE BROSKA,

Defendants.

---

26-CV-0946 (JGLC)

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' GREGORY MACK'S MOTION TO DISMISS

## PRELIMINARY STATEMENT

Plaintiff Paul Agostino respectfully submits this Memorandum of Law in Opposition to Defendant Gregory Mack, Ph.D.'s Motion to Dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Defendant Mack's motion fundamentally mischaracterizes the claims asserted in the Amended Complaint. Plaintiff does not bring this action because he disagrees with Defendant Mack's professional opinions or seeks to assert a claim for medical malpractice. Rather, Plaintiff alleges that Defendant Mack, acting pursuant to authority delegated by the City of Yonkers, participated in the governmental process through which Plaintiff was prevented from returning to work, subjected to involuntary psychological fitness-for-duty evaluations, and ultimately placed on involuntary leave pursuant to New York Civil Service Law § 72 without the procedural protections guaranteed by the Fourteenth Amendment.

The Amended Complaint alleges that Plaintiff was medically cleared by his treating provider to return to unrestricted duty effective October 21, 2022, yet remained excluded from public employment for nearly four months before the City formally

initiated proceedings under Civil Service Law § 72. During that period, Plaintiff alleges that he received no written disciplinary charges, no notice identifying specific threatening conduct, and no meaningful opportunity to respond before being deprived of his protected employment. Defendant Mack's evaluation became part of the process through which those employment decisions were implemented.

Defendant Mack asks this Court to accept as true his characterization of the evaluation process and the conclusions contained in his report. Rule 12(b)(6), however, requires precisely the opposite. At this stage, the Court must accept Plaintiff's well-pleaded factual allegations as true, draw all reasonable inferences in Plaintiff's favor, and determine only whether the Amended Complaint plausibly states claims upon which relief may be granted.

Moreover, Defendant Mack's own sworn testimony demonstrates that his opinions were based upon information supplied by City officials, that he did not independently interview the witnesses whose allegations he considered significant, that he relied upon investigative summaries rather than firsthand testimony, and that numerous factual assumptions underlying his opinions remain disputed. Those factual disputes cannot be resolved on a motion to dismiss, where the Court is not permitted to weigh evidence or determine witness credibility.

Plaintiff further alleges that he preserved complete audio recordings of both employer-directed psychological evaluations. Those recordings constitute the best evidence of what occurred during the examinations and, according to the Amended Complaint, differ in material respects from portions of the subsequent written evaluation reports. The existence of those recordings further demonstrates that Defendant Mack's motion depends upon disputed factual issues that are inappropriate for resolution under Rule 12(b)(6).

Accordingly, because the Amended Complaint plausibly alleges Defendant Mack's personal participation in the constitutional deprivations asserted under 42 U.S.C. § 1983, Defendant Mack's Motion to Dismiss should be denied in its entirety.

## I. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the complaint, not the ultimate merits of the plaintiff's claims. To survive such a motion, a complaint need only contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a Rule 12(b)(6) motion, the Court must accept all well-pleaded factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and construe the complaint in the light most favorable to the non-moving party. The Court may not resolve disputed issues of fact, weigh competing evidence, assess the credibility of witnesses, or choose between competing factual narratives. Those determinations are reserved for later stages of the litigation after the parties have had an opportunity to conduct discovery.

These principles apply with particular force where, as here, Plaintiff proceeds **pro se**. The pleadings of a self-represented litigant must be liberally construed and interpreted to raise the strongest claims they fairly suggest. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

Defendant Mack's motion repeatedly invites the Court to accept Defendant's characterization of the psychological evaluations, the conclusions contained in his written report, and the factual assumptions upon which those conclusions were based. Those arguments ask the Court to determine the accuracy, credibility, and weight of Defendant Mack's professional opinions. Such determinations are not appropriate on a Rule 12(b)(6) motion.

The Amended Complaint alleges that Defendant Mack participated in the governmental process through which Plaintiff was excluded from public employment and that his evaluation relied upon information supplied by City officials that Plaintiff contends was materially incomplete or inaccurate. Accepting those allegations as true, as the Court must at this stage, Plaintiff has plausibly alleged claims under 42 U.S.C. § 1983. Whether Defendant Mack's opinions were ultimately correct, whether the information supplied to him was reliable, and whether his evaluation should be credited are factual questions that cannot properly be resolved on a motion to dismiss.

Accordingly, Defendant Mack's motion should be evaluated solely by determining whether the Amended Complaint plausibly states claims for relief—not by weighing the evidence or resolving disputed factual issues.

## II. DEFENDANT MACK'S MOTION IMPROPERLY ASKS THE COURT TO RESOLVE DISPUTED FACTUAL ISSUES THAT CANNOT BE DECIDED ON A RULE 12(b)(6) MOTION

Defendant Mack's motion repeatedly asks the Court to accept his characterization of the psychological evaluations, the factual assumptions underlying his conclusions, and the accuracy of the information supplied to him by City officials. That is not the inquiry presented by Rule 12(b)(6).

Plaintiff's Amended Complaint alleges that Defendant Mack participated in the governmental process through which Plaintiff was prevented from returning to work, remained excluded from employment after being medically cleared, and was ultimately placed on involuntary leave pursuant to New York Civil Service Law § 72. Plaintiff further alleges that Defendant Mack's evaluation relied upon information supplied by City officials before Plaintiff received formal notice of the allegations upon which those evaluations were based. Accepting those allegations as true, the Amended Complaint plausibly alleges Defendant Mack's personal participation in the constitutional deprivations asserted in this action.

Rather than addressing the sufficiency of those allegations, Defendant Mack asks the Court to conclude that his professional opinions were independently formed, that the information provided to him was reliable, and that his conclusions were correct. Those assertions depend upon disputed factual issues that cannot properly be resolved on a motion to dismiss.

Plaintiff further alleges that complete audio recordings of both employer-directed psychological evaluations have been preserved. According to the Amended Complaint, those recordings differ in material respects from portions of the written evaluation reports prepared after the examinations. Plaintiff also alleges that Defendant Mack's own sworn testimony reflects that significant portions of his opinions were based upon information supplied by Human Resources, that he did not independently interview key witnesses, and that he relied upon investigative summaries rather than firsthand testimony. Whether Defendant Mack's methodology, factual assumptions, and ultimate conclusions were reliable are factual issues that cannot be resolved by accepting Defendant's version of events over Plaintiff's well-pleaded allegations.

At this stage of the proceedings, the Court is not asked to determine whether Defendant Mack's evaluation was ultimately correct. The Court is asked only to determine whether Plaintiff has plausibly alleged that Defendant Mack participated in conduct that contributed to the deprivation of Plaintiff's constitutional rights. Because the Amended Complaint plausibly alleges such participation, and because Defendant Mack's motion depends upon disputed questions of fact and credibility, dismissal pursuant to Rule 12(b)(6) is not warranted.

## III. PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

Defendant Mack first argues that Plaintiff's claims are barred by the applicable statute of limitations because Plaintiff allegedly knew of his injuries no later than October 21, 2022, when he was not permitted to return to work. That argument oversimplifies the

allegations contained in the Amended Complaint and asks the Court to resolve disputed factual issues that cannot properly be decided on a Rule 12(b)(6) motion.

A complaint may be dismissed on statute-of-limitations grounds only where the untimeliness of the claims is apparent from the face of the complaint. At this stage, the Court must accept Plaintiff's factual allegations as true and draw all reasonable inferences in Plaintiff's favor. Where the allegations permit competing inferences regarding when Plaintiff knew or reasonably should have known of the constitutional injuries asserted, dismissal is inappropriate.

The Amended Complaint alleges a continuing sequence of governmental actions extending well beyond October 21, 2022. Plaintiff alleges that after reporting workplace misconduct to Human Resources, he was directed to take Family and Medical Leave Act leave under threat that his employment could be jeopardized, obtained medical clearance to return to unrestricted duty effective October 21, 2022, and nevertheless remained excluded from work while Defendants continued requiring employer-directed psychological evaluations before formally initiating proceedings under New York Civil Service Law § 72. Plaintiff further alleges that the City did not invoke Civil Service Law § 72 until February 14, 2023. Accepting those allegations as true, the Amended Complaint does not establish that all constitutional claims necessarily accrued on October 21, 2022.

Defendant Mack's own involvement likewise did not arise from a single isolated event occurring on October 21, 2022. According to the Amended Complaint, Defendant Mack was retained by the City to conduct a psychological fitness-for-duty evaluation after Plaintiff had already been medically cleared to return to work, prepared a report relied upon by City officials, and participated in the process through which Plaintiff remained excluded from employment and was ultimately placed on involuntary leave pursuant to Civil Service Law § 72. Those allegations describe continuing participation in the events giving rise to Plaintiff's constitutional claims rather than a single discrete act occurring on one date.

Plaintiff further alleges that before the February 14, 2023 notice invoking Civil Service Law § 72, he was never informed that Defendants considered him a danger to himself or others, never received written disciplinary charges identifying threatening conduct, and never received notice of the factual basis upon which Defendant Mack's evaluation was requested. Plaintiff alleges that he repeatedly sought an explanation for the City's actions while continuing to seek permission to return to work after being medically cleared. Accepting those allegations as true, the Amended Complaint does not establish that Plaintiff possessed the knowledge necessary to commence all constitutional claims on the date urged by Defendant Mack.

Defendant Mack's statute-of-limitations argument ultimately depends upon disputed factual assumptions concerning when Plaintiff knew of the alleged constitutional deprivations, the significance of the employer-directed evaluations, and the relationship between those evaluations and the later initiation of Civil Service Law § 72 proceedings. Those factual questions cannot properly be resolved on a Rule 12(b)(6) motion. Because the face of the Amended Complaint does not conclusively establish that Plaintiff's claims are untimely, Defendant Mack's motion to dismiss on statute-of-limitations grounds should be denied.

## IV. PLAINTIFF HAS PLAUSIBLY ALLEGED A PROCEDURAL DUE PROCESS CLAIM AGAINST DEFENDANT MACK

Defendant Mack argues that Plaintiff fails to state a procedural due process claim because Plaintiff allegedly possessed no constitutionally protected property interest and because Defendant Mack merely conducted an independent psychological evaluation. That argument mischaracterizes both the allegations contained in the Amended Complaint and the limited inquiry presented by Rule 12(b)(6).

### A. Plaintiff Has Adequately Alleged a Protected Property Interest

The Amended Complaint alleges that Plaintiff served the City of Yonkers for approximately twenty-five years as a permanent civil service employee and, by virtue of that status, possessed a protected property interest in his continued public employment under New York Civil Service Law. Plaintiff further alleges that he could not be removed from duty or placed on involuntary leave without constitutionally adequate procedures. At this stage, those allegations must be accepted as true.

Whether Plaintiff ultimately proves the precise source and scope of that property interest is not before the Court on a Rule 12(b)(6) motion.

### B. The Amended Complaint Alleges That Defendant Mack Participated in the Process That Led to the Alleged Deprivation

Defendant Mack characterizes himself as nothing more than an independent psychologist who rendered a professional opinion. The Amended Complaint alleges considerably more.

Plaintiff alleges that Defendant Mack was retained and compensated by the City of Yonkers to perform an employer-directed fitness-for-duty evaluation in connection with the City's consideration of action under New York Civil Service Law § 72. Plaintiff further alleges that Defendant Mack prepared a written report that was relied upon by City officials in determining whether Plaintiff would be permitted to return to

work and that the report became part of the process through which Plaintiff remained excluded from employment and was later placed on involuntary leave.

Accepting these allegations as true, Plaintiff has plausibly alleged Defendant Mack's personal participation in the governmental process that affected Plaintiff's protected employment interest.

**C. Plaintiff Alleges That the Challenged Deprivation Occurred Before the Formal § 72 Process Began**

The Amended Complaint alleges that Plaintiff's treating provider medically cleared him to return to unrestricted duty effective October 21, 2022. Plaintiff further alleges that despite that medical clearance, he remained excluded from work for nearly four months before the City formally invoked Civil Service Law § 72 on February 14, 2023. During that period, Plaintiff alleges that he received no written disciplinary charges, no written notice identifying threatening conduct, and no meaningful opportunity to challenge the continued exclusion from work before the employer-directed psychological evaluations were conducted.

According to the Amended Complaint, Defendant Mack's evaluation did not occur in isolation. Rather, it became part of the sequence of events through which Plaintiff remained excluded from employment pending the City's eventual invocation of Civil Service Law § 72.

Whether the procedures ultimately afforded to Plaintiff satisfied constitutional requirements presents factual and legal questions that cannot be resolved by accepting Defendant Mack's version of events over Plaintiff's allegations.

**D. Defendant Mack's Motion Depends Upon Resolving Disputed Facts**

Defendant Mack's motion repeatedly asks the Court to accept the reliability of his professional opinions, the accuracy of the information supplied to him by City officials, and his characterization of the evaluation process. Those are factual matters.

Plaintiff alleges that Defendant Mack relied upon information provided by Human Resources in preparing the fitness-for-duty evaluation and that the resulting report was used by the City in continuing Plaintiff's exclusion from employment. Plaintiff further alleges that complete audio recordings of the evaluations were preserved and that those recordings differ in material respects from portions of the written evaluation reports.

At this stage, the Court is not called upon to determine whether Defendant Mack's opinions were correct or whether the evaluations should ultimately be credited. Those

questions concern the weight of the evidence and the credibility of witnesses, matters that are reserved for later stages of the litigation.

### E. Plaintiff Has Stated a Plausible Due Process Claim

Accepting the allegations of the Amended Complaint as true and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has plausibly alleged that Defendant Mack personally participated in the process through which Plaintiff was deprived of a protected property interest without constitutionally adequate procedures.

Accordingly, Defendant Mack's motion to dismiss Plaintiff's procedural due process claim should be denied.

## V. PLAINTIFF HAS PLAUSIBLY ALLEGED A FIRST AMENDMENT RETALIATION CLAIM

Defendant Mack argues that Plaintiff fails to state a claim for retaliation under the First Amendment because Plaintiff allegedly did not engage in protected speech and because Defendant Mack had no personal involvement in any alleged retaliatory conduct. At the pleading stage, however, the Amended Complaint plausibly alleges both protected activity and Defendant Mack's participation in the sequence of events that followed.

### A. Plaintiff Adequately Alleges Protected Speech

The Amended Complaint alleges that Plaintiff reported workplace misconduct to the City of Yonkers Human Resources Department concerning false and lewd workplace rumors that had become pervasive within the Department of Public Works. Plaintiff further alleges that he made those reports as a citizen, not pursuant to his ordinary job duties, and that reporting such misconduct was not among the responsibilities of his position as a Maintenance Mechanic.

Plaintiff further alleges that Human Resources investigated his complaint and later advised him that, although the investigation was deemed "inconclusive," management acknowledged that employees had in fact been discussing the workplace rumors and had taken steps to stop those discussions. Accepting those allegations as true, Plaintiff has plausibly alleged that he engaged in speech protected by the First Amendment.

### B. Plaintiff Plausibly Alleges a Sequence of Adverse Actions Following His Protected Speech

The Amended Complaint alleges that shortly after Plaintiff reported workplace misconduct, he was advised that his employment could be jeopardized, directed to take Family and Medical Leave Act leave, prevented from returning to work after being

medically cleared, required to undergo employer-directed psychological evaluations, and ultimately placed on involuntary leave pursuant to New York Civil Service Law § 72.

At the pleading stage, Plaintiff is not required to prove retaliatory motive. Plaintiff need only allege facts supporting a plausible inference that the challenged actions followed his protected activity. The chronology alleged in the Amended Complaint is sufficient to satisfy that burden.

**C. Plaintiff Adequately Alleges Defendant Mack's Personal Participation**

Defendant Mack argues that he merely conducted a psychological evaluation and therefore cannot be liable for any alleged retaliation.

The Amended Complaint alleges otherwise.

Plaintiff alleges that Defendant Mack was retained by the City to conduct an employer-directed psychological evaluation after Plaintiff had reported workplace misconduct, after Plaintiff had been medically cleared to return to work, and while Plaintiff remained excluded from employment. Plaintiff further alleges that Defendant Mack prepared a report that was relied upon by City officials in continuing Plaintiff's exclusion from work and ultimately invoking Civil Service Law § 72.

Accepting those allegations as true, Plaintiff has plausibly alleged Defendant Mack's participation in the sequence of events giving rise to the First Amendment claim. Whether Defendant Mack acted with retaliatory intent, knowingly participated in retaliation initiated by others, or simply exercised independent professional judgment presents factual questions that cannot be resolved on a Rule 12(b)(6) motion.

**D. Defendant Mack's Motion Improperly Seeks Resolution of Disputed Factual Issues**

Defendant Mack's motion repeatedly asks the Court to conclude that his role was limited to providing an independent professional opinion. The Amended Complaint alleges that Defendant Mack's evaluation became part of the process through which Plaintiff remained excluded from employment after engaging in protected speech.

Whether Defendant Mack's conduct ultimately constituted actionable retaliation is a question for discovery and, if appropriate, summary judgment or trial. At the pleading stage, Plaintiff has alleged sufficient facts to permit that claim to proceed.

Accordingly, Defendant Mack's motion to dismiss Plaintiff's First Amendment retaliation claim should be denied.

## VI. THE AMENDED COMPLAINT ADEQUATELY ALLEGES DEFENDANT GREGORY MACK'S PERSONAL INVOLVEMENT UNDER 42 U.S.C. § 1983

Defendant Mack argues that he merely performed an independent psychological evaluation and therefore cannot be held liable under 42 U.S.C. § 1983. The Amended Complaint alleges considerably more.

To state a claim under § 1983, Plaintiff must plausibly allege that Defendant Mack, acting under color of state law, personally participated in the conduct that allegedly deprived Plaintiff of his constitutional rights. At the pleading stage, Plaintiff is not required to prove Defendant Mack's ultimate liability. Plaintiff need only allege sufficient facts demonstrating Defendant Mack's direct participation in the events giving rise to the constitutional claims asserted.

### A. The Amended Complaint Alleges Defendant Mack Was Retained to Perform an Employer-Directed Fitness-for-Duty Evaluation

The Amended Complaint alleges that Defendant Mack was retained and compensated by the City of Yonkers to conduct a psychological fitness-for-duty evaluation in connection with the City's consideration of action under New York Civil Service Law § 72. Plaintiff further alleges that Defendant Mack prepared a written evaluation that was relied upon by City officials in determining whether Plaintiff would be permitted to return to work and in the City's subsequent decision to place Plaintiff on involuntary leave.

Accepting those allegations as true, Plaintiff has plausibly alleged that Defendant Mack's role extended beyond merely examining Plaintiff and included preparing a report that became part of the governmental decision-making process affecting Plaintiff's continued employment.

### B. Plaintiff Alleges Defendant Mack Participated in the Process That Continued Plaintiff's Exclusion From Employment

The Amended Complaint does not allege that Defendant Mack acted in isolation. Rather, Plaintiff alleges that Defendant Mack performed the employer-directed evaluation after Plaintiff had already been medically cleared to return to unrestricted duty, while Plaintiff remained excluded from work, and before the City formally invoked Civil Service Law § 72. Plaintiff further alleges that Defendant Mack's report became one of the documents relied upon by City officials in continuing Plaintiff's exclusion from employment and ultimately placing Plaintiff on involuntary leave. Those allegations plausibly describe Defendant Mack's participation in the sequence of governmental actions challenged in this case.

**C. Defendant Mack's Motion Depends Upon His Own Characterization of the Evaluation Process**

Defendant Mack repeatedly characterizes his role as limited to providing an independent professional opinion.

That characterization is not controlling on a Rule 12(b)(6) motion.

The Amended Complaint alleges that Defendant Mack's evaluation was conducted at the City's request, for the City's benefit, and as part of the process through which Plaintiff remained excluded from public employment. Plaintiff further alleges that Defendant Mack relied upon information supplied by City officials in preparing his report and that the resulting evaluation became part of the City's decision-making process regarding Plaintiff's employment status.

Whether Defendant Mack ultimately exercised wholly independent professional judgment or knowingly participated in unconstitutional conduct presents factual questions that cannot properly be resolved at the pleading stage.

**D. Plaintiff Has Plausibly Alleged Defendant Mack's Personal Participation**

Plaintiff does not seek to impose liability upon Defendant Mack merely because he is a licensed psychologist.

Instead, Plaintiff alleges that Defendant Mack personally conducted the employer-directed evaluation, prepared the report relied upon by City officials, and participated in the governmental process through which Plaintiff remained excluded from employment after being medically cleared to return to work.

Those allegations identify specific conduct personally attributed to Defendant Mack rather than conclusory assertions based upon his professional status.

Accepting those allegations as true and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has adequately alleged Defendant Mack's personal involvement under 42 U.S.C. § 1983.

Accordingly, Defendant Mack's motion to dismiss on this ground should be denied.

## VII. DEFENDANT MACK'S ARGUMENT THAT THE ABSENCE OF A PHYSICIAN-PATIENT RELATIONSHIP BARS PLAINTIFF'S CLAIMS MISCHARACTERIZES THE AMENDED COMPLAINT

Defendant Mack argues that he cannot be held liable because he owed Plaintiff no traditional physician-patient relationship while performing an employer-directed

fitness-for-duty evaluation. That argument does not address the claims actually asserted in the Amended Complaint.

Plaintiff does not assert a claim for medical malpractice, professional negligence, or negligent diagnosis. Rather, Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging that Defendant Mack participated in the governmental process through which Plaintiff was prevented from returning to work, remained excluded from public employment, and was ultimately placed on involuntary leave pursuant to New York Civil Service Law § 72 without constitutionally adequate procedural protections.

The existence or absence of a traditional physician-patient relationship does not resolve whether Plaintiff has plausibly alleged Defendant Mack's personal participation in conduct undertaken under color of state law. The Amended Complaint alleges that Defendant Mack was retained by the City of Yonkers to conduct an employer-directed psychological fitness-for-duty evaluation, prepared a written report for the City's use, and participated in the process through which City officials determined Plaintiff's continued employment status. Those allegations concern Defendant Mack's role in governmental decision-making, not the existence of a therapeutic relationship between psychologist and patient.

Defendant Mack further argues that he exercised independent professional judgment in performing the evaluation. Whether Defendant Mack ultimately exercised wholly independent judgment, relied upon information supplied by City officials, or otherwise participated in the constitutional deprivations alleged by Plaintiff presents factual issues that cannot be resolved on a Rule 12(b)(6) motion. At this stage, the Court must accept Plaintiff's factual allegations as true and may not resolve competing factual narratives or determine the weight to be afforded Defendant Mack's professional opinions.

Accordingly, Defendant Mack's argument concerning the absence of a traditional physician-patient relationship does not defeat Plaintiff's constitutional claims as a matter of law and does not provide a basis for dismissal under Rule 12(b)(6).

## VIII. IN THE ALTERNATIVE, PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND

Should the Court conclude that any portion of the Amended Complaint lacks sufficient factual specificity or otherwise fails to state a claim upon which relief can be granted, Plaintiff respectfully requests leave to amend pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure.

Rule 15(a)(2) provides that leave to amend should be freely granted when justice so requires. Plaintiff has proceeded throughout this litigation without the assistance of

counsel and has made a good-faith effort to comply with this Court's prior Order by filing an Amended Complaint containing substantially more detailed factual allegations than those contained in the original pleading. Plaintiff respectfully submits that the Amended Complaint adequately states claims under 42 U.S.C. § 1983. However, should the Court determine that any allegation requires additional factual specificity or clarification, such deficiencies can be cured through amendment rather than dismissal with prejudice.

Defendant Mack argues that further amendment would be futile because Plaintiff previously amended his Complaint following this Court's initial review. That conclusion does not necessarily follow. The fact that Plaintiff previously exercised one opportunity to amend does not establish that any future amendment would be futile as a matter of law. If the Court identifies a pleading deficiency requiring additional factual allegations or clarification, Plaintiff respectfully requests an opportunity to cure that deficiency.

Any amendment would not unfairly prejudice Defendant Mack. This action remains at the pleading stage. No scheduling order has been entered, discovery has not commenced, and Defendant Mack has not yet been required to defend the case on the merits. Under these circumstances, permitting amendment, if necessary, would further the interests of justice while causing little or no prejudice.

Moreover, Plaintiff has acted diligently in pursuing this action. Proceeding without counsel, Plaintiff has attempted in good faith to comply with the Federal Rules of Civil Procedure and this Court's prior directives. Throughout these proceedings Plaintiff has refined his allegations, organized the relevant chronology, and presented the constitutional claims in a more focused manner. Should the Court determine that further clarification is warranted regarding Defendant Mack's alleged role, Plaintiff respectfully requests leave to amend rather than dismissal with prejudice.

Accordingly, if the Court concludes that dismissal of any claim is appropriate, Plaintiff respectfully requests that such dismissal be without prejudice and that Plaintiff be granted leave to file a Second Amended Complaint addressing any pleading deficiencies identified by the Court.

## IX. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendant Gregory Mack's Motion to Dismiss be denied in its entirety.

In the alternative, should the Court determine that any claim or allegation requires additional factual specificity, Plaintiff respectfully requests leave to amend pursuant to

Rule 15(a)(2) of the Federal Rules of Civil Procedure rather than dismissal with prejudice.

Plaintiff further requests such other and further relief as this Court deems just and proper.

Dated:

Respectfully submitted,

**Paul Agostino**

Plaintiff Pro Se

7/13/26

**PLAINTIFF'S EXHIBIT INDEX**
In Opposition to Defendant Gregory Mack, Ph.D.'s Motion to Dismiss

| Exhibit | Description | Purpose |
|---|---|---|
| A | Human Resources Complaint | Protected activity; beginning of chronology. |
| B | September 15, 2022 Human Resources Investigation Determination | Investigation concluded 'inconclusive'; supports chronology. |
| C | October 3, 2022 Return-to-Work / FMLA Correspondence | Shows anticipated return following FMLA leave. |
| D | Treating Provider Return-to-Work Certification (Effective October 21, 2022) | Medical clearance before Dr. Mack's evaluation. |
| E | October 19, 2022 Return-to-Work Email | Supports return-to-work chronology. |
| F | Employer-Directed Psychological Evaluation Notice | Referral to Dr. Mack after medical clearance. |
| G | January 5, 2023 Corporation Counsel Email | Shows Plaintiff had not yet been placed on Civil Service Law § 72 leave. |
| H | February 14, 2023 Civil Service Law § 72 Notice | Formal initiation of the § 72 process. |

# EXHIBIT A

**Human Resources Complaint**

RECEIVED
AUG 02 2022
HUMAN RESOURCES

**City of Yonkers Human Rights**
**Employment Complaint Form**

**1. Your contact information:**

| | | |
|---|---|---|
| First Name PAUL MASSIMINO | | Middle Initial/Name SANTO |
| Last Name AGOSTINO | | |
| Street Address/ PO Box 2848 SPRINGHURST ST | Apt or Floor #: | |
| City YORKTOWN HEIGHTS | State N.Y. | Zip Code 10598 |

**2. Regulated Areas:** You believe you were discriminated against in the area of:

☐ Employment *(including paid internship)*
☐ Apprentice Training
☐ Internship *(unpaid only)*
☐ Volunteer Firefighting *(excludes disability, age, domestic violence victim status, arrest, conviction, genetic history)*
☐ Labor Organization
☐ Employment Agencies
☐ Licensing

**3. You are filing a complaint against:**

Employer Name

Street Address/ PO Box

City | State | Zip Code

Telephone Number:
(     )                Ext.

In what *county or borough* did the violation take place?

Individual people who discriminated against you:

Name: ______________ Title: ______________

Name: ______________ Title: ______________

If you need more space, please list them on a separate piece of paper.

**4. Date of alleged discrimination** *(must be within one year of filing):*

The most recent act of discrimination happened on: ____ month ____ day ____ year

**5. For employment and internships, how many employees does this company have?**

☐ 1-3 ☐ 4-14 ☐ 15-19 ☐ 20 or more ☐ Don't know

**6. Are you currently working for this company?**

| | |
|---|---|
| ☐ Yes. Date of hire: ____ month ____ day ____ year | What is your position? |
| ☐ No. Last day of work: ____ month ____ day ____ year | What was your position? |
| ☐ I was never hired. Date of application: ____ month ____ day ____ year | What position did you apply for? |

**5. Did you report or complain about the discrimination to someone else?** ☑ Yes ☐ No

**If yes, how exactly did you complain about the discrimination?** *(To whom did you complain?)*

I REPORTED THIS SITUATION TO CARLOS MORAN OF HUMAN RESOURCES

**Date you reported or complained about discrimination:** 7 (month) 25 (day) 22 (year)

**What happened after you complained?**

I HAVE STAYED HOME FROM WORK TO AVOID ANY UNNECESSARY CONFLICT WITH OTHER EMPLOYEES.

**If you did not report the discrimination, please explain why:**

**6. Were other people treated the same as you? How?**

*(For example, people who were harassed by the same manager, disciplined or terminated for the same reasons, did not receive an accommodation for the same reasons, etc.).*

*If you are complaining about discrimination relating to race, national origin, age, religion, etc. please describe their races, national origins, religions, etc.*

**7. Were other people treated better than you? How?**

*(For example, people who were not fired for doing the same thing you were fired for, people who were doing the same job but making more money, etc.).*

*If you are complaining about discrimination relating to race, national origin, age, religion, etc. please describe their races, national origins, religions, etc.*

**9. Description of alleged discrimination**

***Tell us more about each act of discrimination that you experienced. Please include dates, names of people involved, and explain why you think it was discriminatory. TYPE OR PRINT CLEARLY.***

ON JULY 20, AT ABOUT 12:30 PM I GOT A PHONE CALL FROM NICK NOLAN TELLING ME THAT THERE IS PUBLIC SURVEILLANCE OF ME GIVING ANOTHER CITY WORKER A BLOW JOB IN A CITY TRUCK. HE SAID THIS WAS ON VIDEO AND IT WAS ME. I LAUGHED AND TOLD HIM TO CUT THE BULLSHIT, BUT HE INSISTED THE ENTIRE CITY KNEW ABOUT THIS AND IT WAS ME. I THEN GOT A CALL FROM BILLY FITZPATRICK WHO IS FRIENDS WITH NICK AND JOE NOLAN. BILLY TOLD ME THAT HE HEARD I WAS CAUGHT GIVING A CRACKHEAD A BLOW JOB IN BACK OF SANITATION. HE ALSO WAS TELLING ME A LOT OF PEOPLE KNEW. BILLY TOLD ME THE OTHER CITY WORKER WAS PETER TIMLIN, I THINK THAT IS HIS NAME. I THEN SPOKE TO GIO SINDONNA, THE UNION CHIEF, HE TOLD ME HE HEARD A COP HAD ON BODYCAM, ME ON MY KNEES GIVING A COP A BLOW JOB IN A PRECINT BATHROOM. NICK NOLAN SAID MIKE GRODOWSKIS CALLED HIS MOTHER AND ASKED HER ABOUT ME AND THIS ACUSATION. NICKS MOTHER THEN ASKED HIM ABOUT THIS. NICK NOLAN SAYS MIKES BROTHER FRANK GRODOWSKIS TOLD MIKE ABOUT THIS. EVERY RUMOR THAT HAS BEEN SAID IN THIS WORKPLACE IS A LIE AND I DO NOT DESERVE THIS, MY FAMILY DOESN'T DESERVE THIS, I AM WORKING MAN, ONCE AGAIN DOESN'T DESERVE THIS.

JOE NOLAN WORKS DPW

NICK NOLAN WORKS DPW

BILLY FITZPATRICK WORKS DPW

FRANK GRODOWSKIS WORKS DPW

GIO SINDONNA IS THE DPW CHIEF SHOP STEWART FOR 456

ROBERT STANLEY DPW - I AM GETTING CALLS FROM COPS THAT ROBERT IS SAYING I AM ON ADMINISTRATIVE LEAVE AND THERE IS A TAPE OF THIS RUMOR. ROBERT HAS ALSO BEEN SPREADING THIS RUMOR TO OTHER CITY WORKERS.

*If you need more space to write, please continue writing on a separate sheet of paper and attach it to the complaint form.* ***DO NOT WRITE IN THE MARGINS OR ON THE BACK OF THIS FORM.***

## Additional Information

*This page is for the Division's records and* ***will remain confidential and will not be sent to the company or person(s) whom you are filing against.***

**1. Contact Information**

| My primary telephone number: ( ) - | My secondary telephone number: ( ) - |
|---|---|
| My email address: | Date of birth: |

Contact person: (*Someone who does not live with you but will know how to contact you if the Division cannot reach you*)

Name: ______________________________

Telephone number: ( ) _____ - ______

Address: ______________________________

Email address: ______________________________

Relationship to me: ______________________________

**2. Special Needs**

I am in need of:

- ☐ Interpretation (if so what language?): ______________________________
- ☑ Accommodations for a disability: COUNCIL FROM A PSYCHIATRIST
- ☐ Privacy. Keep my contact information confidential as I am a victim of domestic violence
- ☐ Other: ______________________________

**3. Settlement / Conciliation**

To settle this complaint, I would accept: *(Explain what you want to happen as a result of this complaint. Do you want a letter of apology, your job back, lost wages, an end to the harassment, etc.?)*

I HAVE BEEN ABUSED AND HARRASSED FOR MANY YEARS EMPLOYED BY THE CITY OF YONKERS, I NEED HELP RIGHT NOW TO DEAL WITH SUCH AN NEEDED NONSENSE THAT COULD HAVE BEEN PREVENTED YEARS AGO, I ASK THAT I AM GIVEN ALL THE TIME I NEED TO FIGURE OUT HOW I CAN NOW DEAL WITH THIS SITUATI[illegible]

**4. Witnesses *(information about witnesses may be shared with the parties as necessary for the investigation)***

The following people saw or heard the discrimination and can act as witnesses:

Name: JOE ~~[illegible]~~ Fiorilli  Title: ______________

Telephone Number: (914) 308 - 9965  Relationship to me: BROTHER IN LAW

What did this person witness?

PEOPLE IN THE WORK ~~PLACE~~ TALKING ABOUT THESE INCIDENTS THAT DID NOT HAPPEN.

Name: ______________  Title: ______________

Telephone Number: ( ) _____ - ______  Relationship to me: ______________

What did this person witness?

______________________________

______________________________

**7. Basis of alleged discrimination:**
Check ***ONLY*** the boxes that you believe were the reasons for discrimination. Please look at page 2 of "Instructions" for an explanation of each type of discrimination.

| | |
|---|---|
| ☐ **Age:**<br>Date of Birth: ______________ | |
| ☐ **Arrest Record** | ☐ **Military Status:**<br>☐ Active Duty ☐ Reserves ☐ Veteran |
| ☐ **Conviction Record** | ☐ **Marital Status:**<br>Please specify: ______________ |
| ☐ **Creed/ Religion:**<br>Please specify: ______________ | ☐ **National Origin:**<br>Please specify: ______________ |
| ☐ **Disability:**<br>Please specify: ______________ | ☐ **Predisposing Genetic Characteristic:**<br>Please specify: ______________ |
| | ☐ **Pregnancy-Related Condition:**<br>Please specify: ______________ |
| ☐ **Gender Identity or Expression, Including the Status of Being Transgender** | ☐ **Sexual Orientation:**<br>Please specify: ______________ |
| ☐ **Race/Color or Ethnicity:**<br>Please specify: ______________<br>☐ Trait historically associated with race such as hair texture or hairstyle | ☐ **Sex:**<br>Please specify: ______________<br>Specify if the discrimination involved:<br>☐ Pregnancy ☐ Sexual Harassment |

If you believe you were treated differently after you filed or helped someone file a discrimination complaint, participated as a witness to a discrimination complaint, or opposed or reported discrimination due to any category above, check below:

☐ **Retaliation:** How did you oppose discrimination: ______________________________

**8. Acts of alleged discrimination:** *What did the person/company you are complaining against do? Check all that apply*

| | | | |
|---|---|---|---|
| ☐ Refused to hire me | ☐ Denied me an accommodation for my disability or pregnancy-related condition | ☐ Denied me leave time or other benefits | ☐ Harassed/ intimidated me (other than sexual harassment) |
| ☐ Fired me/laid me off | ☐ Denied me overtime benefits | ☐ Sexually harassed or intimidated me | ☐ Did not call back after lay-off |
| ☐ Demoted me | ☐ Paid me a lower salary than other co-workers doing the same job | ☐ Gave me different or worse job duties than other workers doing the same job | ☐ Denied me services/treated differently by employment agency |
| ☐ Suspended me | ☐ Denied me an accommodation for my religious practices | ☐ Gave me a disciplinary notice or negative performance review | ☐ Unlawful inquiry, or limitation, specification or discrimination in job advertisement |
| ☐ Denied me training | ☐ Denied me promotion/ pay raise | ☐ Denied a license by a licensing agency | ☐ Other: |

# EXHIBIT B

**September 15, 2022 Human Resources Investigation Determination**

Mayor Mike Spano

CITY OF YONKERS

Carlos Moran
Commissioner of Human Resources

DEPARTMENT OF HUMAN RESOURCES
One Larkin Center
Second Floor
Yonkers, NY 10701

Tel. 914.376.8075
Fax 914.376.8589

September 15, 2022

Paul Agostino

Dear Mr. Agostino,

The investigation of your Grievance Complaint has been completed and deemed that the harassment has been found inconclusive. While evidence exists that people were discussing the rumors, no evidence exists to state who attached your name to the gossip. Management has taken steps to shut down talk of the rumors at work.

Please be advised that the Department of Human Resources considers this matter closed.

Sincerely,

**Tracey Kuzemczak**
Assistant to Commissioner of Human Resources

# EXHIBIT C

**October 3, 2022 Return-to-Work / FMLA Correspondence**

Mayor Mike Spano
CITY OF YONKERS

Carlos Moran
Commissioner of Human Resources

DEPARTMENT OF HUMAN RESOURCES
One Larkin Center
Second Floor
Yonkers, NY 10701

Tel. 914.377.6180
carlos.moran@yonkersny.gov

October 3, 2022

Paul Agostino
2848 Sprinhurst Street
Yorktown Heights, NY 10595

VIA USPS regular & certified

Re: FMLA Return to work reminder

Dear Paul.

This is to advise you that your 12 week Family Medical Leave will expire on October 20, 2022. It is anticipated that you should be returning to work on October 21, 2022. In order for you to be able to do so, please have your medical care professional fill out the enclosed Fitness for Duty Certification. Should you require additional time away from work, your healthcare provider MUST indicate it on this form.

Sign and date the form. You may fax the completed document to me at 914 376-8106, email at Tracey.Kuzemczak@YonkersNY.gov or mail to arrive by October 14, 2022. Be sure to keep a copy for your records.

If you have any questions, please do not hesitate to call me at 914-377-6045.

Sincerely,

[signature]

**Tracey Kuzemczak**
Assistant to Commissioner of Human Resources

cc: Payroll Clerk

# EXHIBIT D

**Treating Provider Return-to-Work Certification (Effective October 21, 2022)**

[illegible] Fitness-for-Duty [illegible] for FMLA [illegible] and the duration of any restrictions. [illegible] this completed Fitness for Duty Certification form [illegible] under the FMLA.

Please have your health care provider complete this form and return it [illegible]

☐ Attached are the essential functions of the employee's position.

**SECTION A: TO BE COMPLETED BY EMPLOYEE**

I give permission to my health care provider to supply information with the requested data for the purpose of determining whether I am fit to return to work after my FMLA leave. In addition, I authorize my health care provider to provide to Human Resources data regarding my fitness to return to work for the purposes of clarifying or authenticating information previously provided, or to provide missing information. I understand that the data I provide will be accessed by authorized personnel whose jobs reasonably require access, such as FMLA leave coordinators or claims management specialists.

Employee Name: PAUL AGOSTINO Employee ID: ______

Employee Signature: [signature] Date: ______

**SECTION B: TO BE COMPLETED BY HEALTH CARE PROVIDER**

The employee is required to provide a complete and sufficient Fitness for Duty Certification, completed by his or her health care provider, prior to returning to work from FMLA leave.

**This certification is being sought only with regard to the particular health condition that caused the employee's need for FMLA leave.**

If a list of the essential functions of the employee's position is included with this form, please consider these essential functions as you review the employee's fitness for duty.

Date of medical examination: 10/12/22

☒ I certify that, with regard to the particular health condition that caused the employee's need for FMLA leave, the employee is fit for duty and able to resume work.

☒ Full/unrestricted duty, effective: 10/21/22 ☐ Modified duty, effective: ______

If modified duty, please describe restrictions, as well as duration of restrictions:

______

☐ The employee is not released to return to work until ______ (date).

I hereby certify that I have examined the employee named above, and declare that the statements made in this Fitness for Duty Certification are true and correct.

Provider name: Denise Foulkes LCSW-R Phone number: 914-352-6116

Provider signature: Denise Foulkes, ND Date: 10/12/22

Address: 3505 Hill Blvd Suite K Yorktown Heights NY 10598

**GENETIC INFORMATION NONDISCRIMINATION ACT OF 2008 DISCLOSURE**

The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title [illegible] from requesting or requiring genetic information of an individual or family member of the individual, except as specifically allowed by this law. To comply with this law, we are asking that you not provide any genetic information when responding to this request for information. "Genetic information" as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.

Ms. Denise D. Foulkes

[illegible]

**HYGEIA INTEGRATED HEALTH LLC**
MY THERAPIST LCSW PLLC
3505 Hill Blvd. Suite K
Yorktown Heights, NY 10598
P: 914.352.6116
F: 914.352.6117

December 7, 2022

Dear Tracey Kuzemczak;

This advises the Paul Agostino (DOB: May 3rd, 1976) was a patient at our practices: My Therapist LCSW PLLC and Michael Hargrove MD PLLC. The patient ended treatment on October 27, 2022 at his request and we did not see the necessity to continue treatment.

Sincerely,

Denise D. Foulkes LCSW-R, MBA

Denise D. Foulkes LCSW-R, MBA

Ms. Denise D. Foulkes LCSW-R
Psychotherapist NYS
License # R048253-1

# EXHIBIT E

**October 19, 2022 Return-to-Work Email**

Fw: Return to work

----- Forwarded Message -----
**From:** Tracey Kuzemczak <tracey.kuzemczak@yonkersny.gov>
**To:** 'pa7546@yahoo.com' <pa7546@yahoo.com>
**Sent:** Wednesday, October 19, 2022 at 10:09:05 AM EDT
**Subject:** Return to work

Morning Paul,

Will you be returning Friday, 10/21 or Monday 10/24? Please advise.

Thank you,

**Tracey Kuzemczak**

Assistant to Commissioner of Human Resources

City of Yonkers | 1 Larkin Center | Yonkers, NY 10701

office: 914.377.6045 | fax 914.376.8106 | internal ext. 8876

email: Tracey.Kuzemczak@YonkersNY.gov

# EXHIBIT F

**Employer-Directed Psychological Evaluation Notice**

Mayor Mike Spano

CITY OF YONKERS

Thomas G. Meier
Commissioner

DEPARTMENT OF PUBLIC WORKS
City Hall
40 South Broadway, Room 311
Yonkers, NY 10701

Tel. 914.377.6270
Fax 914.377.6273
publicworks@yonkersny.gov

**CONFIDENTIAL**

December 28, 2022

Paul Agostino
2848 Springhurst Street
Yorktown Heights, NY 10598

**Re: Leave Pursuant to New York State Civil Service Law Section § 72**

Dear Mr. Agostino:

The City of Yonkers ("City"), by and through the Yonkers Department of Public Works, has requested a psychological examination pursuant to Section 72 of the New York State Civil Service Law ("NYSCSL") in order to determine your ability to perform the duties of the Maintenance Mechanic job title.

In the judgment of the City, you are unable to perform all the essential functions of the position of Maintenance Mechanic based upon a non-work related disability or medical condition. The basis for this belief is, in part, the medical/psychological documentation including, but not limited to, the Fit-For-Duty Psychological Evaluation conducted by Arlene Broska, PH.D. on December 2, 2022 ("December 2022 FDE Report") at Industrial Medicine Associates, P.C. The December 2022 FDE Report noted the diagnosis of "adjustment disorder" and further indicated that "[r]eturn to work not recommended."

Pursuant to NYSCSL § 72, the City, by and through DPW, has scheduled a psychological examination to be administered at Clinical, Police & Forensic Psychological Services PPLC on **Friday, January 6, 2023**, at **10:00 am EST** located at **220 Route 6, Mahopac, NY 10541 – The Wright Building**. A copy of the Maintenance Mechanic job description will be provided to the examining professional.

Also attached for your information is a copy of Section § 72 of the New York State Civil Service Law regarding your rights during this process.

Sincerely,

Jason Baker
Deputy Commissioner
Department of Public Works

# EXHIBIT G

**January 5, 2023 Corporation Counsel Email**

# FW: Paul Agostino -- Section 72

From: Nicholas Devyatkin (ndevyatkin@teamsterslocal456.com)

To: pa7546@yahoo.com

Date: Friday, January 6, 2023 at 10:38 AM EST

Paul:

See below as an FYI. This is what I was explaining to you: you are not technically on Section 72 leave yet. That might happen as a result of todays' exam, but we will have to see.

**From:** Dusan Lakic <dusan.lakic@yonkersny.gov>
**Sent:** Thursday, January 5, 2023 3:17 PM
**To:** Nicholas Devyatkin <ndevyatkin@teamsterslocal456.com>
**Cc:** Gio Sindona <gio.sindona@YonkersNY.gov>; gio446@icloud.com
**Subject:** Paul Agostino -- Section 72

Hi Nick –

I would like to talk to you by phone if you have some time later today or tomorrow. It is concerning Paul Agostino and in particular the attached letter he sent objecting to Section 72 leave and requesting postponement of tomorrow's examination. I just wanted to make a few things clear:

1. The City has not placed P. Agostino on Section 72 leave. The City is sending him for an exam for that purpose as per paragraph 1 of NYS Civil Service Law Section 72. Therefore, his letter objecting to the "imposition of the proposed leave of absence" is very premature. He may object only if and when the City receives the medical report and formally places him on 72 leave. He cannot object or refuse to attend the exam itself.

2. If he does object to being placed on leave, he is entitled to a hearing and all the statutory rights. Similarly, the City also has its statutory rights which includes the right to send him for an exam.

3. The examination scheduled for tomorrow has not been cancelled/postponed. He should attend.

4. Lastly, I received the screenshot of a HIPAA authorization signed by P. Agostino authorizing IMA to send medical information to Local 456. That's fine and I can forward it to IMA, but the authorization should also include the City as an entity to release any medical reports, etc.

Sincerely,

Dusan Lakic, Esq.
Second Deputy Corporation Counsel
Office of the Corporation Counsel
City of Yonkers
T: 914-377-6230
E: dusan.lakic@yonkersny.gov

PDF Paul Agostino.PDF
1.5MB

PDF New York Consolidated Laws, Civil Service Law - CVS §72 _ NY State Senate.pdf
179.7kB

# EXHIBIT H

**February 14, 2023 Civil Service Law § 72 Notice**

Mayor Mike Spano
CITY OF YONKERS

Thomas G. Meier
Commissioner

DEPARTMENT OF PUBLIC WORKS
City Hall
40 South Broadway, Room 311
Yonkers, NY 10701

Tel. 914.377.6270
Fax 914.377.6273
publicworks@yonkersny.gov

**CONFIDENTIAL**

February 14, 2023

**First-Class U.S. Mail, Certified RRR**
Paul Agostino
2848 Springhurst Street
Yorktown Heights, New York 10598

Dear Mr. Agostino:

Pursuant to Section 72(1) of the New York State Civil Service Law, you were examined by Gregory Mack, Ph.D. (Licensed Clinical/Forensic Psychologist) on January 6, 2023. After completion of the psychological examination, the examining professional determined that you are "psychologically unfit to perform the duties as a City of Yonkers Maintenance Mechanic at this time."

The reason(s) for the aforementioned fitness for duty determination are provided in the attached report of fitness for duty evaluation.

Based upon your inability to perform the full duties of your position, and in accordance with the City of Yonkers' statutory authority under Section 72 of the New York State Civil Service Law, you will be placed on an involuntary leave of absence, without pay, effective **February 15, 2023.** However, you are entitled to draw all accumulated, unused sick leave, vacation, overtime and other time allowances standing to your credit.

You have several important statutory rights. You have the right to object to the proposed imposition of the leave of absence within ten (10) working days of your receipt of this notice and to request a hearing either personally or by first class, certified or registered mail, return receipt requested. I have attached a copy of the New York State Civil Service Law Section 72 for your information.

You are entitled to a hearing to be held within thirty (30) days of the date of your request to be held by an independent hearing officer and to receive copies of the hearing record, transcript, and a recommendation at no cost. You are entitled to have counsel or your union representative with you at the hearing and to present medical experts and other witnesses or evidence. The independent hearing officer will make a recommendation to the City of Yonkers, who will then make the final determination. You have a right to appeal the determination of City of Yonkers to the Yonkers Civil Service Commission, or as provided by law.

You may, within one (1) year after the date of commencement of such leave, or at any time before your employment status is terminated, make application to the Yonkers Civil Service Commission for a medical examination for the purposes of certifying that you are physically and/or mentally fit to perform your duties. You or your representative shall be afforded the opportunity to present facts and arguments, including medical evidence, in support of your position. The final determination of the Yonkers Civil Service Commission shall be binding.

If you are certified as being physically and mentally fit to perform the duties of your position, you shall be reinstated to your position. If you are certified as not being physically and mentally fit to perform the duties of your position, or if you are denied reinstatement as noted above, you may seek review of a final determination of the Yonkers Civil Service Commission in accordance with the provisions of article seventy-eight of the civil practice law and rules.

If you are not reinstated within one (1) year or more after the commencement of a leave of absence, your employment may be terminated in accordance with Section 73 of the New York State Civil Service Law and your position filled by a permanent appointment.

Sincerely,

Thomas G. Meier
Commissioner
Department of Public Works

Enclosures

cc: Medical Personnel File